# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| MOHAMED MOSTAFA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 23-04185-CV-C-BCW-P |
| | ) |
| DORIS FALKENRATH, | ) |
| | ) |
| Respondent. | ) |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Jefferson City Correctional Center in Jefferson City, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2017 conviction for first-degree rape, which was entered in the Circuit Court of Boone County, Missouri. Doc. 1, p. 1. Petitioner's conviction was affirmed on direct appeal. Doc. 5-8. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied following an evidentiary hearing (Doc. 5-10, pp. 148-159; Doc. 5-9) and that denial was affirmed on appeal therefrom (Doc. 5-15). For the reasons set forth below, the petition for writ of habeas corpus is DENIED, a certificate of appealability is DENIED, and this case is DISMISSED.

**I. Background**

In affirming the denial of post-conviction relief, the Missouri Court of Appeals, Western District, set forth the following facts:

> From May 27 until May 29, 2015, A.W. ("Victim"), a college student studying at Baker University, visited the University of Missouri campus in Columbia, Missouri for a conference. On May 28, Victim went with a friend to Roxy's, a club in downtown Columbia, just south of campus. Victim consumed alcohol, and later testified that her memory became blurry, but she remembered leaving Roxy's and trying to find her dormitory on campus where she stayed during the conference. Victim was unfamiliar with Columbia and no longer with her friend. While trying to find her dormitory, Victim recalled that a tall, "dark-black-skinned" man with a foreign accent that she could not place approached her. This man was later identified as Mostafa. Surveillance video showed Mostafa sitting on a retaining wall near Roxy's while Victim walked southbound on Hitt Street, away

from Roxy's and toward the university. As Victim walked by, the video shows Mostafa "immediately stand up and begin to walk in the same direction as [Victim]" at 11:34 p.m. He continued walking with her from downtown and onto campus. Victim was lost and attempting to get ahold of her boyfriend for help finding her dormitory. Campus surveillance video depicted Victim and Mostafa walking by Laws Hall at 12:23 a.m.

Victim's next memory was lying "belly-up in the grass" while being choked and held down by Mostafa. Mostafa was "ramming his penis into [her] vagina" while Victim tried to stop him, but he would not stop. Mostafa unsuccessfully tried to insert his penis into Victim's anus. Finally, Mostafa stopped and ran away. Victim, still naked from the waist down, began running to find help. She no longer had her phone. Victim found an emergency call box and pressed the button. Emergency responders transported Victim to the hospital, where nurses completed a sexual assault exam. Victim had scrapes on several parts of her face, knees, and feet, as well as bruises on her jaw line and the side of her neck. Sperm from a vaginal swab taken from Victim matched Mostafa's DNA.

On November 6, 2015, Mostafa was charged by indictment with one count of rape in the first degree and one count of robbery in the second degree. On November 18, 2016, the trial court declared a mistrial as to both counts because the jury was unable to reach a unanimous verdict on either count. Mostafa was then charged by superseding indictment with one count of rape in the first degree ("Count I") and one count of attempted sodomy in the first degree ("Count II").

A three-day trial commenced on July 25, 2017 . . . .

Mostafa testified that he saw Victim fall outside of Roxy's and so he approached her to help. Mostafa admitted that he walked with her a while toward and onto campus. Mostafa had the card of Dhufiqar Kamal ("Kamal"), a taxi driver he knew personally. Mostafa testified that he gave the number to Victim, and Victim called Kamal with her phone. He claimed that Victim could not understand Kamal, so Mostafa took the phone and asked for a ride . . . Mostafa and victim did not get a ride from Kamal, instead, they continued walking in a different direction. Mostafa testified that eventually, Victim came onto him by touching his inner thighs and then his genitalia with her hands and mouth. He claimed that they had consensual sex.

The jury found Mostafa guilty of Count I and not guilty of Count II . . . .

Doc. 5-15, pp. 3-6 (alterations added, footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*,

728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**II. Discussion**

Petitioner raises only one ground for relief in his petition. Doc. 1, p. 5. In the heading of the ground for relief, Petitioner writes "Please See Legal File WD81054." *Id*. In the body of the ground for relief, Petitioner states that he cannot speak English and that he "has not had a[n] interpreter since his trial does not understand the U.S. laws within the State or Federal Land." *Id*. Petitioner attaches an "Affidavit of Truth," wherein he states, "Throughout my entire State court proceedings I was without a[n] interptpretor [sic]." Doc. 1-1, p. 1.

Insofar as Petitioner cited his direct appeal case number as an attempt to raise the same claim that he raised on direct appeal, Respondent argues that Petitioner's ground for relief is not cognizable in federal habeas pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), which held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Doc. 5, pp. 13-14.

The only claim Petitioner raised on direct appeal was a claim that the DNA evidence linking Petitioner to the crime should have been excluded under the exclusionary rule because it was gathered in violation of the Fourth Amendment. Doc. 5-6, pp. 20-31; Doc. 5-8, pp. 12-16. The state court record indicates that Petitioner was given a full and fair opportunity to litigate this claim before the state courts. *See* Doc. 5-8. As a result, *Stone* bars Petitioner's ground for relief insofar as it reasserts his argument on direct appeal, and the mere fact that the state courts may have erred on the issue (which does not appear to be the case) does not entitle Petitioner to habeas relief. *See, e.g., Matthews v. Workman,* 577 F.3d 1175, 1194 (10th Cir. 2009) (concluding that

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

*Stone* precluded consideration of habeas claim that an affidavit in support of a search warrant was obtained with false statements and intentional material omissions in violation of the Fourth Amendment, because the habeas petitioner was afforded a full and fair opportunity to litigate the claim before the state courts); *Moreno v. Dretke,* 450 F.3d 158, 167 (5th Cir. 2006) (same). Petitioner's only avenue for federal review to determine whether or not his Fourth Amendment claim had been correctly decided would have been a petition for certiorari to the United States Supreme Court after seeking review from Missouri's highest court on direct appeal. *See Poitra v. North Dakota*, 79 F. Supp. 3d 1021, 1044 (D.N.D. 2015). Therefore, Petitioner's ground for relief is barred by the doctrine set forth in *Stone* insofar as it reasserts his claim on direct appeal.

Even if *Stone* did not bar Petitioner's direct appeal claim, the state court's denial of Petitioner's claim did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(1) and (2). Therefore, Petitioner's ground for relief is also without merit insofar as it was intended to reassert his claim on direct appeal.

Petitioner fails to establish that any of the other potential claims for relief in his direct appeal legal file warrant federal habeas relief. For instance, the new trial motion in the direct appeal legal file contains nine claims of trial error including the exclusionary rule claim. Doc. 5-2, pp. 100-04. The claims that were not then reasserted on direct appeal are procedurally defaulted. *See Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri Courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998); *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995) ("A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim."). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under the cause and prejudice test, cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id*. at 753 (emphasis in original).

Petitioner fails to establish cause and prejudice for the procedural default of any of his intended claims for relief that he did not raise on direct appeal or in his post-conviction proceedings. Petitioner fails also to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (a petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), *cert. denied,* 549 U.S. 1036 (2006). Petitioner's claims for relief regarding his direct appeal legal file are otherwise conclusory and unsupported by specific, particularized facts which entitle Petitioner to habeas corpus relief. *See Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) ("petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified").

Finally, insofar as Petitioner intended to raise a claim that he was denied the assistance of an interpreter throughout his criminal proceedings, such a claim is procedurally defaulted for the same reasons as those set forth above. Furthermore, such a claim is wholly contradicted by the record, which establishes that an interpreter was provided to help Petitioner communicate with his attorney, as well as at trial and in his post-conviction proceedings. *See generally* Doc. 5-1; Doc. 5-9; Doc. 5-8, p. 11 n. 2 (indicating that Petitioner "testified at both trials through an interpreter."). For these reasons, Petitioner's ground for relief is denied.[2]

### III. Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied.

---

[2] Insofar as Petitioner intended his "Affidavit of Truth" as a request for appointment of counsel (Doc. 1-1, p. 1), pursuant to 28 U.S.C. § 1915(e)(1), the Court may ask an attorney to represent a petitioner who is proceeding *in forma pauperis* if the Court determines that Petitioner's claims are potentially meritorious and that justice demands it. *See Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994) (district court does not abuse its discretion in denying counsel where issues properly can be resolved on the basis of the state court record). If an evidentiary hearing is required, the Court must appoint counsel for a petitioner who qualifies for appointment under the Criminal Justice Act. *See* Rule 8(c) of the Rules Governing Section 2254 Cases. This Court finds that an evidentiary hearing is not required in this matter under 28 U.S.C. § 2254(d), (e) and that appointment of counsel is not required for the fair presentation of Petitioner's claims.

**IV. Conclusion**

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED, a certificate appealability is DENIED, and this case is DISMISSED.

It is so **ORDERED**.

/s/ Brian C. Wimes_____
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Dated: _December 27, 2023.